[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 325 
This is a construction site accident case. Plaintiff, Roderick Henderson, was an employee of Custodis Construction Company, a general contractor engaged in the construction of a smoke stack under a contract with Alabama Power Company. The cylindrical stack was being constructed by pouring concrete into metal forms which formed an inner and outer ring around the stack. Henderson was standing at the base of the stack when one of the forms bent and freshly poured concrete fell onto him. He suffered a 60% permanent disability to his left shoulder and a broken leg which healed with minimal impairment; three and one-half years loss of work and numerous surgical procedures to correct the damage to his shoulder. The jury awarded plaintiff $500,000. Defendant Power Company appeals, alleging numerous errors for reversal. We find no reversible error, therefore affirm.
 I
Alabama Power Company contends the evidence was insufficient to sustain a jury finding that it breached a duty owed plaintiff, as a proximate consequence of which he was injured. It admits responsibility for the kind of ingredients used in mixing the concrete and the quantity of each. It maintained employees at the concrete mixing plant to continuously check the mixture for suitability for use on this particular job; also maintained an employee at the construction site who supervised the pouring of the concrete at all times, and periodically checked the concrete for rate of hardening. The concrete mixture on the day of the accident contained plastiment, which makes the concrete more workable; it also increases the amount of time required for setting or hardening. Henderson's evidence tended to show that, due to the increase in the amount of plastiment in the mixture, the first one to two feet of concrete poured failed to set properly, and, when another three feet were poured, the hydrostatic pressure created by the soft concrete caused the form to buckle and the concrete to pour out. APC maintains that the forms, owned by Custodis, used to hold the concrete in place were faulty; that it, APC, had no duty to know the forms were not designed to hold a full load of wet concrete, or that it was necessary for the concrete to harden at any particular rate. *Page 326 
The evidence tended to show APC had great authority, control and supervision over the construction of the stack; evidenced by its contract with Custodis and by maintaining, through its employees, close supervision over the mixing and pouring of the concrete. The ultimate test of defendant's duty to use due care is the foreseeability of the harm which would result if due care was not exercised. Under the evidence APC was chargeable with knowledge: of the suitability of the forms for holding concrete; that the addition of plastiment retarded the rate of hardening of concrete, and failure of the concrete to harden properly would allow hydrostatic pressure to build and result in failure of the forms. The evidence was sufficient to authorize the jury to find APC owed a duty to Henderson which it breached and his injuries resulted.
 II
Defendant challenges admission of opinion testimony of an allegedly unqualified lay witness. The witness, Harold Hatfield, an ironworker and construction worker since 1954, had been employed by Custodis since 1967. His testimony was offered by deposition. Objections to portions of the deposition were heard by the court out of the hearing of the jury. The following testimony was admitted over APC's objection: that the failure of the concrete to set up properly was responsible for the failure of the forms; it was his opinion that the forms bent because there was too much pressure; that the concrete had been poured for two and one-half hours and should have set up by then. APC objected to the admission of such testimony on the ground that the witness was not qualified as an expert on concrete or forms used in pouring concrete. It is notable that both sides presented testimony from other witnesses qualified as experts in the field of concrete and concrete failure.
The use of workers with long years of experience in certain trades and occupations to testify regarding particular elements or circumstances of their work is not unique. If the trial court exercises its authority to qualify the witness with reasonable care, its decision will not be disturbed. Here the trial court was aware of Mr. Hatfield's qualifications as a construction worker, and took care to allow only so much of his testimony to go to the jury as was deemed proper.
The competency of a particular witness to testify as an expert is discretionary with the trial court, its decision will not be disturbed unless palpably erroneous. We find no error regarding admission of the testimony of Hatfield. Hagler v.Gilliland, 292 Ala. 262, 292 So.2d 647 (1974).
 III
Improper conduct of a juror during the trial. During the course of the trial a man in the audience spoke to one of the jurors. He also spoke to Mr. and Mrs. Henderson. The court held an en camera hearing and took the testimony of a spectator who witnessed these "conversations." According to this testimony, as the juror rose from the jury box along with the other jurors, she asked the man in the audience, "You are not working today?" He replied, "No, we had a breakdown." The spectator testified this was the only conversation he heard the juror have with this man. In Hatcher v. Camp, 279 Ala. 475,187 So.2d 232 (1966), this court upheld denial of a motion for new trial on grounds of juror interference under similar circumstances stating that "casual and ordinary civilities" exchanged between a party and a juror do not constitute reversible error, if the court clearly ascertains that it had no effect on the mind of the juror. The ruling of the trial court who heard the testimony in this case is presumed correct and we find no abuse of discretion on which to predicate reversal.
 IV
Failure to exclude an allegedly intoxicated juror. On the morning the jury was to begin deliberation, it was brought to the court's attention that one of the jurors was suspected of having the aroma of alcohol on his breath. The court held a hearing in *Page 327 
chambers and asked the juror numerous questions. The juror stated he had not been drinking that morning; that he had drunk some alcoholic beverages the night before, but not after 11:30 p.m.; that he felt he could continue with the jury's deliberation. APC's motion to strike the juror was overruled.
The fact that a juror drank intoxicating beverages during a trial or deliberation of a verdict is not grounds for a new trial unless the beverages were consumed in such quantities or at such time to incapacitate the juror from performing his duties, or unless it would be reasonable to conclude that the drinking may have influenced the verdict. Alabama Lumber Co. v.Cross, 152 Ala. 562, 44 So. 563 (1907).
Again, this is a matter within the discretion of the trial court; due weight and consideration will be given the ruling of the trial judge who investigated the matter and had an opportunity to observe the juror. Diamond v. State, 219 Ala. 674,123 So. 55 (1929). The record here shows a full investigation by the trial judge and we will not overturn his ruling in the absence of palpable error or abuse of discretion.
 V
Denial of APC's challenge for cause of a venire member. During voir dire, the venire was asked whether anyone would have difficulty voting for a verdict in favor of APC. One member stated that he was mad one month when he got a $72 power bill, but that he could be fair. On further examination by the trial court, he stated that this would not keep him from being fair. The trial court declined to excuse the venire member.
The test to be applied is probable prejudice. Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised. The trial judge here properly satisfied himself that there was no cause to disqualify the venire member for probable prejudice. We will not reverse on this point, absent abuse of discretion.Mutual Building Loan Association v. Watson, 226 Ala. 526,147 So. 817 (1933); Grandquest v. Williams, 273 Ala. 140,135 So.2d 391 (1961).
 VI
Prejudicial remarks in closing argument. Plaintiff's counsel stated, in his closing remarks:
 "* * * You be the billing department, and for once you send you [sic] bill to the Power Company and make them pay for this human being that they have virtually destroyed. * * *
 "* * * I ask * * * that you send the Power Company a bill for $600,000.00 * * *"
APC made no objection at the time the remarks were made; no motion to exclude, and no motion for mistrial.
Without due objection by counsel or a motion to exclude and a ruling by the trial court, improper argument of counsel is not ground for new trial nor the subject of review on appeal. An exception is where it can be shown that counsel's remarks were so grossly improper and highly prejudicial as to be beyond corrective action by the trial court. The remarks in this case do not fall within that category of statements so grossly improper or highly prejudicial as to place it within the exception to the general rule. Since there was no timely objection by counsel, there is no error for this court to review. Johnson v. State, 272 Ala. 633, 133 So.2d 53 (1961);Anderson v. State, 209 Ala. 36, 95 So. 171 (1922); Prescott v.Martin, Ala., 331 So.2d 240 (1976).
 VII
Excessive award by the jury. APC maintains the verdict, of $500,000 in this case, is excessive. At the outset let us say, after careful review of the incidents of trial, it does not appear the verdict resulted from passion, prejudice, partiality or corruption on the part of the jury. The inquiry, *Page 328 
then, must be: did the jury, in fixing the verdict, have sufficient basis in the evidence that the amount did not exceed the bounds of its discretion?
The evidence would authorize the jury to conclude that Henderson was, when injured, 33 years of age, weighed 220 pounds, and in good health; free of illness or disability. He was married, father of a young daughter, with whom he played and wrestled on the floor; was a fisherman, played baseball and was physically active at work and play. His occupational training was solely as an ironworker, and the job he was performing when injured and at which he was earning in excess of $15,000 a year, with an increase reasonably expected.
When two tons of wet concrete fell 120 feet onto a scaffold, collapsing it, the scaffold and concrete fell upon Henderson. He suffered a comminuted fracture of the fibula and tibia (both bones of the lower right leg), with bone piercing the skin and exposed to the air. The area of his left shoulder and upper arm suffered a brachial plexus injury; a tearing or shredding of the principal nerves supplying the shoulder area, paralyzing those nerves. Over the ensuing two year period he was hospitalized on three separate occasions, at one of which a surgical procedural was performed that is described as a trapezius transfer; one of the neck muscles is transferred to the shoulder so it may perform some of the functions normally performed by the muscles atop the shoulder.
Throughout the period of his hospitalization and treatment he was variously confined to bed, required to use a wheel chair, his arm in a sling, wore a leg brace and a body cast. When he last saw his doctor he had achieved maximum improvement but was left with a 60% permanent impairment of his left shoulder. He has a minor limp, leg cramps and continuous pain in his injured arm which, he says, he can do nothing with other than raise it up; his wife describes the arm as limp at his side. The jury saw the atrophied arm, smaller than his right one. He can no longer play on the floor with his daughter; no longer fishes or plays baseball. Although he is enrolled in a vocational rehabilitation program to train as an automobile mechanic, there is no evidence that he will be employable as such.
Special damages of loss of earnings were $52,000. That is only one factor to be considered by the jury in awarding damages for personal injuries; more important factors often exist, as they do in this case. The loss of earning capacity, disability of the person affected by the injuries, pain, and the mental, as well as physical, suffering which is the consequence of physical injury, physical impairment, and the new and different course one's future life must take, reasonably expected to continue in the future for 35 years or more, are some of those factors. The jury could reasonably conclude from the evidence that Henderson faced an uncertain and problematic work future, during which he would never be free of pain nor, during which, could he avail himself of those pleasures of life formerly enjoyed; part and parcel of that which makes life worthwhile, not merely bearable.
For a thorough discussion of the distinction between loss of earnings and loss of earning capacity, as well as other factors to be considered by the jury in awarding damages in personal injury cases, see Beloit Corporation v. Harrell, Ala.,339 So.2d 992 (1976), and cases cited therein. Mindful of our limited authority to disturb a jury verdict and aware that the trial court's denial of a motion for new trial on the ground of excessive award creates a presumption in favor of that verdict, we are not convinced the jury abused its discretion in this case in fixing the amount of the award. Alabama ElectricCo-operative, Inc. v. Partridge, 283 Ala. 251, 215 So.2d 580
(1968).
AFFIRMED.
HEFLIN, C.J., and BLOODWORTH, JONES and SHORES, JJ., concur. *Page 329