This is a wrongful death action.
On 6 January 1980, Mr. Evart Bail died as a result of a ruptured abdominal aortic aneurysm while a patient of the defendant doctors at Druid City Hospital, Tuscaloosa, Alabama. During the eight days that Bail was a patient in that hospital, he was treated for pancreatitis. Betty Jane Gray, as administratrix of the estate of her father, Evart Bail, alleges his death was due to the negligence of the defendants: Dr. James W. Sherwood, Dr. Henry G. Herrod, and Dr. James T. Gascoigne and others.
The case was tried to a jury in Tuscaloosa, which returned a verdict for the three doctors. The trial court overruled Gray's motion for a new trial. This appeal followed.
The dispositive issue on appeal is whether the trial court erred to reversal in refusing to grant plaintiff's challenges for cause of two of the prospective jurors. With regard to this issue, Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala. 1977) provides:
 "The test to be applied is probable prejudice. Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised. . . ."
In Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391 (1961), this court outlined a more pointed test to be used in determining when jurors could be successfully challenged for cause pursuant to the above statute:
 "The test to be applied has been stated to be that of probable prejudice. Probable prejudice for any reason disqualifies a prospective juror. Mutual Building Loan Ass'n v. Watson, 226 Ala. 526, 147 So. 817. For a juror to be impartial between the parties he must be `indifferent as he stands unsworn'. Wilson v. State, 243 Ala. 1, 8 So.2d 422, 430."
Id., 273 Ala. at 146, 135 So.2d 391.
Under these principles of law we review the trial court's action regarding whether there was an abuse of discretion.
A similar issue was presented in Ballard v. State, 225 Ala. 202,142 So. 668 (1932), where this court considered whether there was error in refusing the defendant's challenge for cause of a juror who, after testifying he could give the defendant a fair trial, winked at the State's solicitor [now district attorney]. Regarding the winking *Page 837 
incident, the following statement was made:
 "We think that this circumstance was prima facie an indication of a favorable consideration from the standpoint of the state. We cannot disregard what all people understand. . . ."
Id., 225 Ala. at 203, 142 So. 668.
Ballard was reversed for the combined effect of this and another separate error.
The conduct and actions of the challenged jurors in the instant case match and surpass the degree of manifested predisposition shown by the Ballard veniremen. During the voirdire examination of the jury panel, a prospective juror, Reba Whaley, stated that defendants "Dr. Herrod and Dr. Sherwood have been our family doctors for a number of years." When asked whether that fact would affect her ability to fairly and impartially hear the evidence in the case, she responded, "I would rather not sit on it." The plaintiff's attorney did not further question Whaley.
Another prospective juror, Michael Webber, during voir dire
responded: "I know Dr. Gascoigne; he is our company doctor." When asked whether he had been treated by Dr. Gascoigne, Mr. Webber replied, "Yes, sir. I have seen him on several occasions." Mr. Webber then stated: "I want to ask to be struck from this jury." Webber was asked no further questions.
There is often a close personal relationship between physician and patient, derived, perhaps in part, from the necessity for trust and confidence upon the part of the patient in his physician's judgment. "The sick man loves the physician because he is sick," says Plato in Lysis (217a).[1] The Roman philosopher Lucius Annaeus Seneca (8 B.C.-A.D. 65) explored the bond between physician and patient. We find his observations timely:
 "Why then, are we so much indebted to these men? Not because what they sold us is worth more than we paid for it, but because they have contributed something to us personally."
Seneca, de, Beneficiis, VI, 16.[2] We cannot ignore this time-honored sympathy between doctor and patient.
Venirepersons Whaley and Webber, by their requests to be excluded from a jury gathered to render a verdict for, or against, their personal physicians, were attempting to express that their involvement in this physician-patient relationship prejudiced them to such an extent they could not be fair and impartial. In Alabama we require indifference of our jurors.Wilson v. State, 243 Ala. 1, 8 So.2d 422, 430 (1942). This court "cannot disregard what all people understand," Ballard,supra, 225 Ala. at 203, 142 So.2d at 668. The request of jurors Whaley and Webber to be excluded from the jury was prima facie
an indication of their interest in the conviction or acquittal of the defendants, prohibited by the holding of Alabama PowerCo. v. Henderson, supra.
Each of these jurors should have been excused for cause by the trial court. Therefore, the judgment below is due to be reversed; it is hereby reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.
[1] As quoted by L. Entralgo, Doctor and Patient, 17 (F. Partridge trans. 1969).
[2] Id. At 1.