561 So.2d 224 (1989)
Fate WOOD and Annette Wood
v.
Dr. David Bruce WOODHAM and Southeast Neurological Associates, P.A.
88-515.
Supreme Court of Alabama.
December 22, 1989.
Rehearing Denied May 18, 1990.
M. Clay Alspaugh, S. Shay Samples and Ronald R. Crook of Hogan, Smith, Alspaugh, Samples & Pratt, Birmingham, for appellants.
Thomas H. Keene of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellees.
ADAMS, Justice.
In this medical malpractice case Fate and Annette Wood allege that Dr. David Bruce Woodham "negligently performed an anterior cervical fusion on Fate Wood and caused, allowed, or permitted his esophagus to be perforated during the surgery." We reverse the defendants' judgment and remand.
The issues in this case are such that a detailed account of the facts is unnecessary. Therefore, pertinent facts will be incorporated during a discussion of the issues involved in this appeal.
The Woods first argue that the trial court erred by refusing to strike three jurors for cause. During voir dire, the following took place with regard to one of the jurors in question:
"MR. ALSPAUGH: Thank you. And you?
"MRS. DILLARD: I am Penny Dillard.
"MR. ALSPAUGH: And, you are a nurse? Where are you a nurse?
"MRS. DILLARD: At Surgicenter in Dothan.
"MR. ALSPAUGH: Do you work with him [Dr. Woodham, one of the defendants] in the operating suite with him?
"MRS. DILLARD: Yes.
"MR. ALSPAUGH: A few times or many?
"MRS. DILLARD: Well, the past, six years ago, I used to work with him more than I do now.

*225 "MR. ALSPAUGH: You do have occasions though to work with him now?
"MRS. DILLARD: We do out-patient surgery over there and
"MR. ALSPAUGH: You still do have an occasion to work with him?
"MRS. DILLARD: Yes. From time to time.
"MR. ALSPAUGH: Do you think that with this being a malpractice case, your being an R.N. in that area and having knowledge of him and having worked with him, that that would affect your ability to be fair and impartial? Or, do you think that or anything else, because of your relationship with Dr. Woodham, that you would rather stay out of the case?
"MRS. DILLARD: Not necessarily.
"MR. ALSPAUGH: Is there any question?
"MRS. DILLARD: I don't believe I would.
"MR. ALSPAUGH: All right. You don't believe you would, but you are not exactly certain?
"MRS. DILLARD: I don't think I would. That is all I can say. It depends on what I hear.
"MR. ALSPAUGH: Depends on what you hear?
"MRS. DILLARD: The evidence and everything.
"MR. ALSPAUGH: If there was a dispute, factually in the evidence, that the Woods say A about a conversation with Dr. Woodham and Dr. Woodham says B about the same conversation; would you, because of your knowledge of him and your having dealt with him, give him the benefit of the doubt as to who was right at that time, making those statements?
"MRS. DILLARD: I don't think so.
"MR. ALSPAUGH: You are not positive? Is that right?
"MRS. DILLARD: I can't be positive. I don't know him personally, I just worked with him.
"THE COURT: Okay. Mrs. Dillard, I am going to ask you the same question. If you were chosen as a juror in this case, would you decide this case based exclusively on the evidence and my instructions as to the law and no other factors?
"MRS. DILLARD: Yes, sir."
The second juror, Mary Grissett was questioned as follows:
"MR. ALSPAUGH: As I said before, this is what some people call medical malpractice and others call professional negligence. In this case, the Plaintiff has alleged that the doctors are guilty of conduct on one occasion that was negligent. That is to meet the standard of care for physicians like yourself. [sic] This is a medical malpractice case that we have all heard about. I would like to know whether or not any of you have any preconceived feelings, notions, ideas, without telling me the reason why, if you have such a feeling; based on anything, religion or whatever, that makes you feel one should not sue a doctor for treatment that that doctor rendered that person.
". . .
"MR. ALSPAUGH: I take it then that none of you have a preconceived idea that one should not sue another, with the exception of Mrs. Haynes, possibly, for a claim of money because of a negligent act or a careless act? That is none of you have a preconceived idea about civil lawsuits, one shouldn't sue another, stated in another way?
"A LADY: I just don't want to ___ I would like not to have to ___
"MR. ALSPAUGH: You have a preconceived idea that folks should settle their differences some way other than suing?
"A LADY: Yes.
"MR. ALSPAUGH: What is your name?
"A LADY: Mary Grissett.
". . . .
"MR. KEENE: So, would the fact that he [David Wood] is related to Mr. Wood here, in your opinion, have a bearing on your ability to decide this case fairly?
"MRS. GRISSETT: I don't know. My husband, I think, knows this man. I would rather not be involved in it.
". . . .

*226 "MR. KEENE: .... But, let me ask you, Mrs. Grissett. Are you saying that in all fairness, because of your knowledge or your husband's knowledge of Mr. Wood or maybe one of his brothers, you don't feel you could sit and hear this evidence and decide this case fairly?
"MRS. GRISSETT: Yeah. I could. But, I would rather not.
"MR. KEENE: So, what you said earlier ___ I think you said earlier that you didn't really believe in suing people?
"MRS. GRISSETT: Uh-huh. (Affirmative response.)
"MR. KEENE: I believe you said in answer to that, you would just rather not sit in judgment? Is that right?
"MRS. GRISSETT: That is right.
"MR. KEENE: So, that applies both to just on lawsuits and your potential knowledge of Mr. Wood?
"MRS. GRISSETT: Oh, yeah.
"THE COURT: Mrs. Grissett, you stated you would prefer not to serve. But, if you were chosen to serve, could you do so and decide the case based only on the evidence and my instructions as to the law?
"MRS. GRISSETT: I will do my best.
"THE COURT: Are you saying you are not quite sure you could do that?
"(No Response.)
"THE COURT: Really, we are not trying to embarrass anyone on this panel by asking these questions. But, it is extremely important that I get answers to these things so I can know how to proceed with my own job in this case. Could you decide the case based only on the evidence and my legal instructions?
"MRS. GRISSETT: Yes."
Finally, the following transpired with regard to the third juror, Gwendolyn G. Crittenton:
"MR. ALSPAUGH: Have any of you ever been employed in a medical health care circumstance where you were providing medical health care? I know Mrs. Dillard is and I know that you are a doctor's wife. This is close, but have any of you ever been employed in a position where you were a nurse, a pathologist, lab technician, any kind of job where you were associated with a medical care community?
". . . .
"A LADY: I was a medical transcriptionist for Med Lab Associates.
"MR. ALSPAUGH: You are Mrs. Crittenton?
"MRS. CRITTENTON: Yes.
"MR. ALSPAUGH: You typed up whatever they dictated? Is that right?
"MRS. CRITTENTON: (Nods her head to the affirmative.)
"MR. ALSPAUGH: Do you know whether or not pathologywhat is the name of the group that you worked for?
"MRS. CRITTENTON: Pathology Laboratories.
"MR. ALSPAUGH: Ever had an occasion to analyze any of Dr. Woodham's tissue samples or anything of that nature?
"MRS. CRITTENTON: No.
"MR. ALSPAUGH: The fact that you do work here in the medical health care community, would that, in and of itself, affect your ability to sit here and listen to the evidence?
"MRS. CRITTENTON: (Witness nods her head to the affirmative.)
"MR. ALSPAUGH: You think it would?
"MRS. CRITTENTON: (Nods her head to the affirmative.)
"THE COURT: Mrs. Crittenton, I believe you said that there could be some factors that would affect your judgment in this case if you were chosen as a juror in this case. Would you be able to decide it based only on the evidence and my instructions as to the law?
"MRS. CRITTENTON: (Nods her head to the affirmative.)
"THE COURT: You could?
"MRS. CRITTENTON: Yes."
Following the voir dire, the trial judge refused to grant the Woods' challenges for cause with regard to these three jurors. As a result, the Woods were forced to use three of their peremptory strikes to strike Mrs. Crittenton, Mrs. Dillard, and Mrs. Grissett.
*227 This same date this Court in Knop v. McCain, 561 So.2d 229 (Ala.1989) (opinion on application for rehearing), has reversed a case for error on the part of the trial judge in denying a plaintiff's challenge for cause. In that case, the law in this area was summarized as follows:
"The grounds on which a juror may be challenged for cause are set out in Code 1975, § 12-16-150. Additional grounds for challenge for cause under the common law still exist where they are not inconsistent with the statute. Kinder v. State, 515 So.2d 55, 60 (Ala.Crim.App. 1986).
"In challenging a juror for cause, the test to be applied is that of probable prejudice. Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala. 1976). While probable prejudice for any reason will serve to disqualify a prospective juror, qualification of a juror is a matter within the discretion of the trial court. Id.; Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1255-56 (Ala.1986); Village Toyota Co. v. Stewart, 433 So.2d 1150, 1156 (Ala.1983). This Court must look to the questions propounded to, and the answers given by, the prospective juror to see if this discretion was properly exercised. Id. A reversal is not appropriate absent abuse of this discretion. Alabama Power Co. v. Henderson, 342 So.2d at 327; Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391 (1961); Mutual Building & Loan Ass'n v. Watson, 226 Ala. 526, 147 So. 817 (1933); Brown v. Woolverton, 219 Ala. 112, 115, 121 So. 404 (1928); see Clark v. State, 443 So.2d 1287 (Ala.Crim.App.1983).
"Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Crim.App.1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836 [99 S.Ct. 120, 58 L.Ed.2d 132] (1978); see Willingham v. State, 262 Ala. 550, 552, 80 So.2d 280 (1955); Mahan v. State, 508 So.2d 1180 (Ala. Crim.App.1986). This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence. See Fordham v. State, 513 So.2d 31, 34-35 (Ala.Crim.App.1986); Jarrell v. State, 355 So.2d 747, 749 (Ala. Crim.App.1978)."
In Knop, supra, one of the prospective jurors stated, "The evidence would have to be, I guess ... the evidence would have to be overwhelming for your client before I would be willing to give her money." 561 So.2d at 230. That same juror, in responding to questions from plaintiff's counsel, stated that she "probably" could be "fair and impartial" to the plaintiff, although there was "some doubt." Id. at 232. Even though that juror later answered affirmatively that she could listen to the evidence and apply to that evidence the law as explained by the judge, this Court was of the opinion that her bias was strong enough to indicate "probable prejudice." Id. at 232, 234.
In the case sub judice, the facts indicate the same probable prejudice as found in Knop. Her answers to the Court's questioning, supra, indicate an obvious vacillation on Mrs. Grissett's part with regard to the questions asked by the judge. First, she stated that she would rather not serve on the jury; then she said she would do "her best" to make a decision based only on the evidence; then, she did not respond to the court's attempt to clarify her answer; and finally, she responded affirmatively to the court's inquiry as to whether she could base her decision only on the evidence and the judge's instructions.
With regard to the questioning of Mrs. Crittenton, she simply answered all questions asked of her in the affirmative and, without more in-depth questions, it appears that she, like Mrs. Grissett, exemplified the probable prejudice that should have entitled the Woods to have at least these two *228 jurors stricken for cause. While we note that both jurors eventually stated that they could decide the case based only on the evidence, the simple extraction of an affirmative response from a potential juror does not necessarily absolve that juror of probable prejudice. For this reason, we reverse the judgment and remand the cause for a new trial.
For the sake of expediency, we will address the second issue that the Woods raise on appeal. That issue is whether the trial judge erred in refusing to allow them to use an answer to their request for admissions to bear upon Dr. Woodham's credibility. When the Woods filed their complaint, they also filed their request for admissions; one of their requests was that Dr. Woodham admit that he perforated Mr. Wood's esophagus. On September 22, 1982, Dr. Woodham answered that he was without sufficient information to admit or deny that he had done so. When Dr. Woodham filed his answer to the complaint on September 30, 1982, and again when he was deposed on September 14, 1985, he denied having perforated the esophagus. The trial court, in refusing to allow the line of questioning, stated:
"Now, Gentlemen, hold it. I don't have any difficulty in ruling on this whatever. They said, at that time, they said they were unable to admit or deny. The answer in the deposition was they denied it. As far as I am concerned, that is the end of the matter and I am [not] going to allow the doctor to be cross-examined on his inability to admit or deny at that time."
We are of the opinion that Dr. Woodham's initial response to the request for admission, that is, that he was without sufficient knowledge to admit or deny, did not constitute an admission and that the judge did not err in refusing to allow questioning in that regard to impeach Dr. Woodham's later denial. There was evidence that Dr. Woodham needed to consult the Veterans' Administration hospital record before answering the request, and, therefore, we find no error.
For the foregoing reasons, the judgment is due to be, and it hereby is, reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ALMON and SHORES, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
Although I concurred in Knop v. McCain, 561 So.2d 229 (Ala.1989), I do not think that the jurors in this case showed such probable prejudice that they should have been struck for cause. The uncertainty displayed by the jurors here just does not indicate the degree of prejudice shown by the juror comments in Knop.
The jury in this case heard the evidence and found in favor of the defendant; there has been no showing of any unfairness or prejudice towards the plaintiff that would taint the jury's verdict. There has been no showing that the failure of the trial court to strike these jurors for cause led to any actual prejudice to the plaintiff's case, and, in such questions of prejudice, much is left to the discretion of the trial judge.
I believe that this Court should not get into the area of reviewing jury verdicts in a case such as this, where the only possible prejudice shown is that a party may have had to use a peremptory strike to eliminate a juror that that party may not have wanted. That is the reason for peremptory strikes. Ala.Code 1975, § 12-16-55, states:
"It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose."
The jurors found to be challengeable for cause here, even though they may have been more knowledgeable in the healthcare field, nevertheless were part of the "fair cross section of the population," and, unless *229 there was a showing of such bias as would disqualify them for cause, they were just as qualified as a juror who may have been a patient and a recipient of healthcare services, or as some other member of the population.
I joined in Knop because I was of the opinion in that case that the challenged jurors had expressed such a bias as to make them disqualified for cause.
No party is entitled to have a jury that is favorable to one side or the other in a lawsuit.
The rule announced today, in my opinion, expands the scope of review in cases such as this and can be used by appellants in the future whether they were plaintiffs or defendants below. This Court has recently expanded the prohibition against racial discrimination in the selection of jurors into the area of civil litigation, Thomas v. Diversified Contractors, Inc., 551 So.2d 343 (Ala.1989), and I think that we should be very careful in allowing jurors to be struck for cause merely because one party does not like them or because that party can question them in such a manner as to make their answers sound equivocal. This is not a Knop case.
HOUSTON, J., concurs.