ON APPLICATION FOR REHEARING
The original opinion is withdrawn and the following substituted therefor:
Beverly S. Knop filed a complaint against Dr. Paul McCain and McCain, Thomas, New, Manifold, P.A., alleging that they had negligently failed to diagnose and to properly treat endometriosis. During the voir dire examination of the venire, two potential jurors, Ms. Bailey and Ms. Fuller, were challenged for cause by the plaintiff. The trial court denied Knop's challenges for cause after further questioning the jurors. A jury trial was then held, resulting in a verdict for the defendants. Knop's appeal is based on a claim of error in the trial court's denial of her challenges for cause.
The questions by counsel and the trial court of jurors Bailey and Fuller and their answers were as follows:
"MR. CROOK: [plaintiff's counsel]
 "Is there any reason in the world, namely either you, any members of your immediate family, that have gone to Dr. McCain, gone to partners in his group, that either he has delivered your baby, or other partners in his group has delivered your babies, that maybe he is going to deliver your baby, or may deliver his baby [sic] — is there anything about this community, the number of physicians in this community that would just make you feel uncomfortable being on this jury, and would put you in a position where you don't think that you can be honestly fair and impartial to Ms. Knop, if such an occasion arose?
"MS. BAILEY: (Raising hand.)
 "MR. CROOK: Ms. Bailey, let me ask you a specific question. Do you believe that you can be completely fair and impartial to Mrs. Knop, based on the evidence that you will hear?
 "MS. BAILEY: I think it would make me uncomfortable; being a teacher, I guess lawsuits bother me a little bit.
"THE COURT: I did not understand what you said.
"MS. BAILEY: It would bother me a little bit.
 "THE COURT: Being a teacher, lawsuits bother you a little bit?
"MS. BAILEY. Yes.
 "MR. CROOK: Let me ask you that other question: Is there anything here that you don't like about lawsuits?
 "MS. BAILEY: I guess my personal opinion is that people are too quick to sue. The evidence would have to be, I guess, I guess the evidence would have to be overwhelming for your client before I would be willing to give her money."
With respect to Juror Fuller, the following transpired. *Page 231 
 "MR. CROOK: Thank you again for your honesty. I am not trying to put you on the spot or anything, but is there anyone else?
 "MS. FULLER: I have something that you haven't touched on. I have taught all three of Dr. McCain's children.
"MR. CROOK: That is Ms. Jones?
 "MS. FULLER: No. Ms. Fuller. I, also am at this time, teaching Dr. New's daughter. I taught his other two children.
 "MR. CROOK: By the fact that you have taught his children and maybe, by the fact that you are going to be teaching Dr. New's children, is there something about that that would prevent you from being completely fair and impartial to Mrs. Knop in this particular case?
 "MS. FULLER: I think it would have been difficult for me, yes.
 "MR. CROOK: Do you think that if the evidence came down as such that maybe the evidence pointed to a slight degree of negligence on Dr. McCain's part, would you be unable to be completely fair and impartial to Mrs. Knop — you may not understand that?
 "MS. FULLER: I understand what you are saying. I would like to believe that I would be fair and impartial, but . . .
 "MR. CROOK: I think you are saying that there is some doubt in your mind that you can be?
 "MR. KEY: Your Honor, we are going to object to him just going on and on and trying to suggest answers to the jurors that would misqualify [sic] them from participating in this case.
 "THE COURT: I overrule the objection. There are limits. . . . I think you are aware of them.
 "MR. CROOK: Yes, sir, I just want to try to make sure that I understand. Could you be fair and impartial to Mrs. Knop, based on the evidence that you hear, and also based upon your relationship with Dr. McCain's children?
"MS. FULLER: Probably.
"MR. CROOK: Is there any doubt in your mind?
"MS. FULLER: Some."
After the plaintiff's examination of the venire, the defendant examined Jurors Bailey and Fuller in the following manner:
 "MR. KEY: (defendant's counsel) Let me direct this question to . . . Ms. Fuller, Ms. Bailey, . . . right there — you folks indicated — and I will repeat what you said — you indicated for one reason or the other, if you were selected to be a juror in this case, you might be uncomfortable, or words to that effect.
 "If, after we go through the striking process here, if you find yourselves to be members of the jury in this case, would you be able to listen to the evidence in this case and listen to the Judge when he tells you about the law and render a decision based on the evidence and the law?
"Would you be able to do that Ms. Fuller?
"MS. FULLER: Yes, sir.
". . . .
"MR. KEY: Ms. Bailey?
"MS. BAILEY: Yes, sir."
Knop challenged Jurors Bailey and Fuller for cause. The trial court denied Knop's challenges for cause after the court's own questioning. In this regard, the following transpired:
 "THE COURT: We have Ms. Fuller, . . . Ms. Bailey, . . . Let me ask you a question and I will ask it together, but I would like individual answers.
 "Let me ask you, whether or not, after hearing all of the evidence in this case and the law that I will explain to you, whether or not you could base a verdict or return a verdict based on that evidence solely and upon the law that I will give you. Without regard to any personal feelings or biases, could you lay all that aside and try this case based on what you hear in this courtroom and on nothing else? Is there any one of you that could not do that?
"(No response.)
 "THE COURT: I will allow you to ask a further question.
"MR. KEY: We have no further questions. *Page 232 
"MR. CROOK: We have nothing else, Your Honor.
 "THE COURT: All right, thank you, you may go. I will show those challenges overruled."
The grounds on which a juror may be challenged for cause are set out in Code 1975, § 12-16-150. Additional grounds for challenge for cause under the common law still exist where they are not inconsistent with the statute. Kinder v. State,515 So.2d 55, 60 (Ala.Crim.App. 1986).
In challenging a juror for cause, the test to be applied is that of probable prejudice. Alabama Power Co. v. Henderson,342 So.2d 323, 327 (Ala. 1976). While probable prejudice for any reason will serve to disqualify a prospective juror, qualification of a juror is a matter within the discretion of the trial court. Id.; Black Belt Wood Co. v. Sessions,514 So.2d 1249, 1255-56 (Ala. 1986); Village Toyota Co. v. Stewart,433 So.2d 1150, 1156 (Ala. 1983). This Court must look to the questions propounded to, and the answers given by, the prospective juror to see if this discretion was properly exercised. Id. A reversal is not appropriate absent abuse of this discretion. Alabama Power Co. v. Henderson, 342 So.2d at 327; Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391
(1961); Mutual Building Loan Ass'n v. Watson, 226 Ala. 526,147 So. 817 (1933); Brown v. Woolverton, 219 Ala. 112, 115,121 So. 404 (1928); see Clark v. State, 443 So.2d 1287
(Ala.Crim.App. 1983).
Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City ofBirmingham, 356 So.2d 231 (Ala.Crim.App. 1977), cert. denied,356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120,58 L.Ed.2d 132 (1978); see Willingham v. State, 262 Ala. 550,552, 80 So.2d 280 (1955); Mahan v. State, 508 So.2d 1180
(Ala.Crim.App. 1986). This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence. See Fordham v. State, 513 So.2d 31,34-35 (Ala.Crim.App. 1986); Jarrell v. State, 355 So.2d 747,749 (Ala.Crim.App. 1978).
The record, as set forth above, shows that both Bailey and Fuller expressed probable prejudice against the plaintiff, contrary to the standard as set forth in Alabama Power Co. v.Henderson, supra; see also Ex parte Rutledge, 523 So.2d 1118
(Ala. 1988); Gray v. Sherwood, 436 So.2d 836 (Ala. 1983). Juror Bailey, in responding to questions by plaintiff's counsel, stated that in her personal opinion people "are too quick to sue" and that "the evidence would have to be, I guess, the evidence would have to be overwhelming for your client before I would be willing to give her money." Juror Fuller, also in responding to questions from plaintiff's counsel, stated that she "probably" could be fair and impartial to Ms. Knop although there was "some" doubt.
Counsel for the defendants then questioned these two prospective jurors, along with others who had indicated a possible inability to be fair and impartial. The prospective jurors were asked to place themselves in a jury box and assume that they were selected as jurors. They then were to determine whether they would be able to decide the case based upon the evidence and the law as given to them by the court. Both Ms. Bailey and Ms. Fuller answered this question in the affirmative. Plaintiff's counsel then challenged both jurors for cause. The trial court asked the following of both jurors (and others): "[A]fter hearing all of the evidence in this case and the law that I will explain to you, [can you] return a verdict based on that evidence solely and upon the law that I will give you. Without regard to any personal feelings or biases, could you lay all that aside and try this case based on what you hear in this courtroom and on nothing else?" There was no response from either Bailey or Fuller. *Page 233 
While jury bias need not be established by unmistakable clarity, Wainwright v. Witt, 469 U.S. 412, 419, 105 S.Ct. 844,849, 83 L.Ed.2d 841 (1985), the court proceedings "must not only be fair, but must also appear to be fair." Ex parte Beam,512 So.2d 723, 724 (Ala. 1987). Answers given by prospective jurors on voir dire
 "fall into two categories: 1) those affecting the defendant's choice of peremptory challenges (those light impressions which may fairly yield to the testimony); and 2) those affecting the juror's qualifications (those strong and deep impressions which will close the mind against the testimony)."
Beam at 724. We also indicated in Beam:
 "Understandably, as is often true in such cases, this juror used language such as 'I just can't answer that,' 'I would hope that I would be fair,' and 'I hope [I would not be unfair]'; and, when taken out of context and standing alone, they appear to be expressions of equivocation. Any and all doubt, however, as to the depth and strength of [the juror's] impressions is removed when the substance of her replies is viewed in full context and as a whole. . . ."
Id. Reviewing the testimony of prospective jurors Bailey and Fuller as a whole, we conclude that their answers cannot be viewed as only a "light impression which may fairly yield to the testimony." Rather, their answers appear immediately as "those strong and deep impressions which will close the mind against the testimony." See also our opinion in Wood v.Woodham, 561 So.2d 224 (1989).
This Court reversed the trial court's denial of a challenge for cause in Gray v. Sherwood, 436 So.2d 836 (Ala. 1983), a medical malpractice case. The standard we used was that of probable prejudice as set forth in Alabama Power Co. v.Henderson, supra. During the voir dire examination of the jury panel in Gray, a prospective juror stated that the defendant doctors "have been our family doctors for a number of years." When questioned further as to whether this fact would affect her impartiality if selected to sit on the jury, the juror responded, "I would rather not sit on it."
Another prospective juror in Gray indicated, "I know [the doctor]; he is our company doctor." The juror additionally indicated that he had been treated by the doctor on several occasions and also asked that he be "struck from this jury."Id. at 837. We determined that the expression by both jurors of their involvement with the physicians "prejudiced them to such an extent they could not be fair and impartial" and said, "In Alabama we require indifference of our jurors." Id. We held inGray that the jurors should have been excused for cause by the trial court, and we reversed the judgment, accordingly.
In Ex parte Rutledge, 523 So.2d 1118 (Ala. 1988), we again reversed a trial court's judgment for its denial of a challenge for cause. A prospective juror indicated in voir dire questioning that he would be prejudiced against lawyers from an organization such as the Southern Poverty Law Center. When questioned as to whether this would cause a problem if he were a juror in the case, the prospective juror replied, "I don't know," and "I'm just not sure." Rutledge at 1119. The juror further indicated that if he listened to the attorneys argue, as opposed to simply looking at the evidence, then it was "quite possible" that his feelings would weigh in the decision. Finally, when questioned by the trial court as to whether he could "listen to the evidence in the case and base [his] verdict in the case solely on the evidence, regardless of who the lawyers were," the prospective juror replied, "I guess I would. I just don't know." Id. at 1120.
The individual responses in Ex parte Rutledge, taken separately, could have the effect of making the juror appear only uncertain as to his feelings. However, the initial response of the juror indicated probable prejudice against attorneys from organizations such as the Southern Poverty Law Center. His answers taken as a whole confirm his deep-seated impressions.
We followed our holding in Beam, supra, in deciding Ex parteRutledge: *Page 234 
 "The holding in Beam can have no greater relevance than it does to the facts of the instant appeal. The juxtaposition of the disputed answers of the prospective juror in Beam and those given by [the prospective juror here], when taken in the full context of the voir dire examination by both the trial court and [the attorney], convinces us of the 'depth and strength of [the prospective juror's] impressions.' "
Ex parte Rutledge at 1120-21.
In our analysis of this case, we must look to the impressions of both prospective jurors Bailey and Fuller. It was quite clear that lawsuits bothered Ms. Bailey. The statement of prospective juror Bailey indicating that she thought "people are too quick to sue," combined with her statement that "the evidence would have to be overwhelming . . . before [she] would be willing to give [the plaintiff] money," immediately conveys the fact of her probable prejudice and will not reduce her answers from a challenge for cause to grounds for a peremptory challenge.
Ms. Fuller also indicated that it would be difficult for her to be fair and impartial. She stated that she "would like to believe that [she] would be fair and impartial," but conceded that there was "some doubt" in her mind. The objections by plaintiff's counsel were specific enough to put the trial judge on notice that probable prejudice existed with both Bailey and Fuller.
This Court cannot and does not seek to supplant the functions of the trial court in evaluating the personal demeanor of the jurors. Once a juror makes an initial statement that is vague, ambiguous, equivocal, uncertain, or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial. However, once a juror indicates initially that he or she is biased or prejudiced or has deepseated impressions, so as to show that he or she cannot be neutral, objective, or impartial, the challenge for cause must be granted. This is particularly true when a juror, such as Ms. Fuller, volunteers her doubts.
Once Ms. Bailey indicated that "people are too quick to sue" and that "the evidence would have to be overwhelming" before she would award the plaintiff any money, the trial court should have granted the plaintiff's challenge for cause. Ms. Bailey indicated probable prejudice in her initial response and she should have been excused from the jury without the plaintiff's having to use a peremptory challenge. Ms. Fuller's statements indicating that her teaching Dr. New's children would make it difficult for her to be fair and impartial also indicated a deep-seated impression not subject to change. Her initial response, particularly in light of her volunteering this information, shows probable prejudice, and that showing of probable prejudice required that she be dismissed for cause.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
JONES, ADAMS, and KENNEDY, JJ., concur.
MADDOX, J., concurs specially.