On November 6, 1991, Willia Dean Lawrence Sewell filed a complaint in the Lamar County Circuit Court against Thomas Webb and Weyerhaeuser Company. In her complaint, Sewell alleged that on November 10, 1990, Webb and Weyerhaeuser had unlawfully entered upon 37 acres of land she owned and cut down, destroyed, injured, and removed trees, saplings, seedlings, shrubs, bushes, and other plant life existing on that land. Sewell sought compensatory damages in the amount of $100,000, claiming that as a result of Webb and Weyerhaeuser's trespass, her land had been damaged. Sewell also sought punitive damages in the amount of $500,000, claiming that Webb and Weyerhaeuser's conduct had been willful, wanton, reckless, and/or oppressive.
The case was tried before a jury beginning on August 15, 1994. At the close of all the evidence, the trial court directed a verdict in favor of Sewell on her trespass and conversion claims. The issues of compensatory and punitive damages were submitted to the jury, and the jury awarded Sewell $35,000 in compensatory damages and $10,000 in punitive damages. On September 21, 1994, Sewell filed a motion for a new trial or, in the alternative, a motion for additur, which was denied by the trial court on December 8, 1994.
Sewell appeals, raising two issues: (1) Whether the trial court abused its discretion and thereby erred in denying her challenges for cause as to three prospective jurors and also in later denying her motion for a new trial; and (2) Whether the jury's verdict of punitive damages was against the great weight and preponderance of the evidence, was inadequate as a matter of law, and was so inadequate as to indicate prejudice, passion, or other improper motive, so that the trial court abused its discretion and erred to reversal in failing to set aside the jury's verdict and in not granting a new trial.
Sewell first argues that the trial court erred in denying her challenges for cause as to three prospective jurors, Larry Crowley, M.L. Brown, and Jackie Murphy.
Sewell's attorney began the initial questioning on voir dire by asking all the prospective jurors whether any of them worked for Weyerhaeuser. Larry Crowley, the first prospective juror in question, responded that he and his father were in the logging business, and that at the time of the trial they were doing business, under contract, with Weyerhaeuser. Upon further questioning by Sewell's attorney, Crowley stated that his business relationship with Weyerhaeuser would influence his decision in the case. Thereafter, Weyerhaeuser's attorney asked Crowley whether he could be fair and impartial in spite of his business relationship with Weyerhaeuser, to which Crowley stated that he could. However, after voir dire of all the prospective jurors, Sewell's attorney challenged Crowley for cause. Crowley was then questioned by the trial judge, in open court, and the following transpired:
 "THE COURT: Mr. Crowley, would you stand up, please? When they were asking you some questions earlier, I think you had said under some questions that you might have a problem reaching a fair and impartial verdict because you did logging and I think took some logs to Weyerhaeuser; right?
"PROSPECTIVE JUROR: (Nodding head.)
 "THE COURT: I think later on you said maybe you could. I want you to think about this and I want you to answer this *Page 1224 
question. Based on the fact that you work with them and take them some logs, would you set that aside and could you reach a verdict solely, fairly and impartially according to the law and the facts in the case and what you do wouldn't influence you? Can you do that or not?
"PROSPECTIVE JUROR: I think I could.
 "THE COURT: I need better than think. If you can, just —
"PROSPECTIVE JUROR: I could."
Thereafter, the trial judge denied Sewell's challenge for cause as to prospective juror Crowley.
Sewell's attorney also asked all the prospective jurors whether any of them knew Delmer Harris, a key witness for Webb and Weyerhaeuser. M.L. Brown, the second prospective juror in question, responded that he was related by marriage to Harris. Brown's wife was Harris's sister-in law. Upon additional questioning by Sewell's attorney, Brown further stated that he would have a tendency to believe Harris over other witnesses "because I know how truthful he is." Thereafter, Weyerhaeuser's attorney questioned Brown, asking Brown whether he could be fair and impartial in spite of the fact that Harris was his brother-in-law. Brown stated that he could render a fair and impartial decision. However, after voir dire of all the prospective jurors, Sewell's attorney also challenged Brown for cause. Brown was subsequently questioned by the trial judge, at the bench, and the following transpired:
 "THE COURT: Brother-in-law. If he testifies — Of course in any kind of lawsuit we wouldn't be up here if everybody agreed, so there is two sides to them. That's very obvious. And he may testify basically better for one side than the other. And I really don't know which side. If he did that — And I think you had testified that you might believe him over the other witnesses?
 "PROSPECTIVE JUROR: Knowing him, I would because I know what kind of person he is.
 "THE COURT: All right. Let me ask you [this]. If he testified and you have a relationship with him and based on what he says, could you set that aside?
"PROSPECTIVE JUROR: Yes, I could.
 "THE COURT: Could you hear the case no matter what he said — Would it be possible for you to be impartial if you believe him more than the other witnesses? That's the question. And it's just human nature. We're not putting you on the spot, but we need to know.
 "PROSPECTIVE JUROR: If he spoke, I'd believe him, but still I'd weigh the evidence both sides. I'd make a decision myself.
 "THE COURT: Could you say that — If the other side of the story was different, is it your testimony that you would believe Delmer more than the other side? Have you already got a —
 "PROSPECTIVE JUROR: It would depend on what I heard, the evidence, what was spoke. I can't make that decision because I don't really know. I hadn't heard both sides. I believe Delmer is an honest person but just because of that — I still weigh both sides before I made a decision.
 "THE COURT: You wouldn't give him more believability than any other witness in this case?
"PROSPECTIVE JUROR: No, sir."
The trial judge then denied Sewell's challenge for cause as to prospective juror Brown.
The third prospective juror in question, Jackie Murphy, also responded that he knew Harris. Murphy stated that he was Harris's nephew; Harris's wife and Murphy's mother were sisters. Upon additional questioning by Sewell's attorney, Murphy stated that his relationship to Harris could possibly influence his decision. Like Crowley and Brown, Murphy was also asked by Weyerhaeuser's attorney whether he could be fair and impartial in spite of the fact that Harris was his uncle, to which Murphy responded that he could. However, after voir dire of all the prospective jurors, Sewell's attorney also challenged Brown for cause. Thereafter, Brown was questioned by the trial judge, at the bench, and the following transpired:
 "THE COURT: And I believe that they may have asked you whether you would believe him over any other witness. *Page 1225 
"PROSPECTIVE JUROR: Yes, sir.
 "THE COURT: Of course in a lawsuit the fact that we're up here and because there is two sides to every story.
"PROSPECTIVE JUROR: Right.
 "THE COURT: What he says may not be what the other witnesses said.
"PROSPECTIVE JUROR: Yes, sir.
 "THE COURT: What I'm asking you is could you put that aside and not, you know — Are you going to believe him regardless of what the other witnesses say or can you put that out of your mind?
"PROSPECTIVE JUROR: Yes, sir.
 "THE COURT: And listen to both sides and make a judgment purely on the evidence and on the law?
"PROSPECTIVE JUROR: Yes, sir."
The trial judge then denied Sewell's challenge for cause as to prospective juror Murphy.
The general grounds for which a prospective juror may be challenged for cause are set forth in § 12-16-150, Ala. Code 1975. Other common law grounds for challenge for cause exist that are not inconsistent with the statute. Wood v. Woodham,561 So.2d 224 (Ala. 1989). In Knop v. McCain, 561 So.2d 229, 232
(Ala. 1989), our supreme court summarized the law on challenges for cause as follows:
 "In challenging a juror for cause, the test to be applied is that of probable prejudice. Alabama Power Co. v. Henderson, 342 So.2d 323, 327
(Ala. 1976). While probable prejudice for any reason will serve to disqualify a prospective juror, qualification of a juror is a matter within the discretion of the trial court. Id.; Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1255-56
(Ala. 1986); Village Toyota Co. v. Stewart, 433 So.2d 1150, 1156 (Ala. 1983). This Court must look to the questions propounded to, and the answers given by, the prospective juror to see if this discretion was properly exercised. Id. A reversal is not appropriate absent abuse of this discretion. Alabama Power Co. v. Henderson, 342 So.2d at 327; Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391
(1961); Mutual Building Loan Ass'n v. Watson, 226 Ala. 526, 147 So. 817 (1933); Brown v. Woolverton, 219 Ala. 112, 115, 121 So. 404 (1928); see Clark v. State, 443 So.2d 1287
(Ala.Crim.App. 1983).
 "Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Crim.App. 1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978); see Willingham v. State, 262 Ala. 550, 552, 80 So.2d 280
(1955); Mahan v. State, 508 So.2d 1180
(Ala.Crim.App. 1986). This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence. See Fordham v. State, 513 So.2d 31, 34-35
(Ala.Crim.App. 1986); Jarrell v. State, 355 So.2d 747, 749 (Ala.Crim.App. 1978)."
"While jury bias need not be established by unmistakable clarity, Wainwright v. Witt, 469 U.S. 412, 419, 105 S.Ct. 844,849, 83 L.Ed.2d 841 (1985), the court proceedings 'must not only be fair, but must also appear to be fair.' Ex parte Beam,512 So.2d 723, 724 (Ala. 1987)." Knop, 561 So.2d at 233.
In this case, the facts indicate probable prejudice on the part of prospective juror Crowley; he first stated to Sewell's attorney that the fact that he and his father do business with Weyerhaeuser would influence his decision in this case to the point that he did not think he could be fair and impartial. However, Crowley then stated to Weyerhaeuser's attorney that he could be fair and impartial. When questioned by the trial judge about his ability to be fair and impartial, Crowley stated, "I think I could," and when pushed further by the trial judge for a more definite answer he stated, "I could." Crowley initially stated that he could not be objective. Thus, Crowley's statements that he could be fair and impartial indicate an obvious vacillation and appear to be more a result of the trial judge's persistent questioning. *Page 1226 
With regard to Brown, we note that he first stated to Sewell's attorney that he would believe the testimony of Harris, a key witness, over any other witnesses, because, he said, "I know how truthful he is." Furthermore, when the trial judge asked Brown whether he would believe Harris over other witnesses, Brown once again stated, "Knowing him, I would because I know what kind of person he is." However, upon subsequent questioning by the trial judge, Brown finally stated that he would not give more "believability" to the testimony of Harris than to any other witness. The fact that Brown initially stated that he would give more credence to the testimony of Harris plainly indicates his lack of impartiality. Thus, Brown's assurances to the trial judge that he would weigh both sides of the evidence were inconsistent with his statements that he would believe Harris over other witnesses.
When Jackie Murphy was initially questioned by Sewell's attorney as to whether his decision in the case would be influenced by the fact that Harris was his uncle, he stated "Possibly, yes." However, when the trial judge questioned Murphy as to whether he could be fair and impartial, Murphy answered each of the trial judge's questions in the affirmative. Murphy's affirmative responses to the trial judge that he could make a decision based solely on the evidence and the law were inconsistent with his prior statement that his decision in the case would be influenced by the fact that Harris was his uncle.
The purpose of voir dire is to provide both parties with the opportunity to satisfy themselves that they have an impartial jury. Uptain v. State, 534 So.2d 686
(Ala.Crim.App. 1988). However, this purpose is defeated when a juror is already predisposed to attach more credence to the testimony of one witness than to that of other witnesses or when a juror is biased toward one party. Id. "[O]nce a juror indicates initially that he or she is biased or prejudiced or has deep-seated impressions, so as to show that he or she cannot be neutral, objective, or impartial, the challenge for cause must be granted." Knop, 561 So.2d at 234. In the instant case, Sewell had to use her peremptory challenges to eliminate three prospective jurors who had each indicated that they had biases or prejudices which would influence their decisions in the case.
We, therefore, hold that the trial court abused its discretion by denying Sewell's challenges for cause of prospective jurors Larry Crowley, M.L. Brown, and Jackie Murphy. Accordingly, the judgment of the trial court is due to be reversed, and the case is remanded for a new trial.
Our resolution of the above issue pretermits any need to address Sewell's second issue; however, in the interest of judicial economy, we note the following:
In a post-trial motion, Sewell moved for a new trial on the grounds that the jury's award of punitive damages was against the great weight and preponderance of the evidence, was inadequate as a matter of law, and was so inadequate as to indicate prejudice, passion, or other improper motive. Sewell moved, in the alternative, that the trial court reevaluate the jury's punitive damages award under the guidelines set forth in § 6-11-23 and § 6-11-24, Ala. Code 1975; Hammond v.City of Gadsden, 493 So.2d 1374 (Ala. 1986); Green Oil Companyv. Hornsby, 539 So.2d 218 (Ala. 1989); and Armstrong v. RogersOutdoor Sports, 581 So.2d 414 (Ala. 1991).
Thereafter, the trial court entered an order denying Sewell's motion for a new trial. The trial court's order stated:
 "This cause came on to be heard on [Sewell's] Motion for New Trial and Additur, and [Sewell] having conceded that the Motion for Additur is moot, and the Court does hereby so hold, and the Court having heard the evidence and arguments of counsel, and having considered the same, it is ORDERED, ADJUDGED and DECREED that [Sewell's] Motion for New Trial is, and it is hereby denied."
We note that a jury has discretion in awarding punitive damages, but that the exercise of that discretion is subject to judicial review to insure that it is not the result of bias, passion, prejudice, corruption, or other improper motive. Land Associates, Inc. v. Simmons, 562 So.2d 140
(Ala.Civ.App. 1989). It is within the trial court's discretion whether to grant or to deny a motion for a new trial. Jacksonv. Souza, 636 So.2d 427 (Ala.Civ.App. 1994). *Page 1227 
However, our supreme court has stated that because the appellate courts do not have the advantage of observing all the parties to the trial, like the trial court, the trial court is required "to state for the record the factors considered in either granting or denying a motion for new trial based upon the alleged excessiveness or inadequacy of a jury verdict." Hammond, 493 So.2d at 1379. Nonetheless, "[w]here the record on appeal is sufficiently clear for us to review the excessiveness issue [or inadequacy issue], a Hammond
remand is not necessary. However, the record must contain all the necessary factors for review if we are to review the case without the benefit of a Hammond hearing." Valley Bldg. Supply, Inc. v. Lombus, 590 So.2d 142, 146 (Ala. 1991).
Having reviewed the record, this court notes that if we were not reversing this case on Sewell's challenge for cause issue, then we would find it necessary to remand this case for the trial court to conduct a hearing in accordance withHammond, supra.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN, YATES, and MONROE, JJ., concur.
CRAWLEY, J., concurs in the result only.