Sharon Hutchins, as administratrix of the estate of Freeman Hutchins, Jr., deceased, sued Dr. Curtis Roberts; Dr. Roger Eiland; Surgery Practice, P.C.; and Central Alabama Community Hospital, alleging medical malpractice. The jury returned a verdict of $1 million against Dr. Roberts, Dr. Eiland, and Surgery Practice, and found for the hospital. The court entered a judgment based on that verdict. Dr. Roberts and Dr. Eiland appeal. The sole issue on review is whether the trial court improperly dismissed for cause seven potential jurors who were, or had been, patients of the defendant physicians and who described one or the other of them as their "family doctor."
The defendants argue that the trial court based its dismissal on an erroneous interpretation of Dixon v. Hardey, 591 So.2d 3
(Ala. 1991). In that case, the plaintiff sued her gynecologist, alleging medical malpractice. During the course of jury selection, the trial court refused to strike for cause a potential juror who was a patient of the defendant doctor. Although the potential juror expressed doubt as to whether she could serve without bias, the trial court did not question her to determine whether this bias existed, and it prevented the plaintiff's counsel from inquiring further into the subject. This Court recognized the "intimate or trusted relationship" that develops between a patient and her gynecologist and held that proof of such a relationship is prima facie evidence of probable prejudice on the part of a veniremember. Once this prima facie evidence has been presented, " 'it is the trial court's function to question the juror further, so as to ascertain whether the juror can be impartial.' " Dixon, at 7, quoting Knop v. McCain, 561 So.2d 229, 234 (Ala. 1989). Even if a juror eventually states that he or she could render a verdict exclusively upon the evidence, the simple affirmative response does not necessarily absolve that juror of probable prejudice.Dixon.
In this case, the record shows that at the outset of the jury selection process, a number of jurors indicated that they were, or had been, patients of the defendant physicians. The trial court asked the following questions:
 "[D]o any of you feel that because of that relationship that you feel if that person is under oath will give a greater weight and credibility to that person's sworn testimony just because you happen to know that individual than you would anybody else who came in and also took the same oath and testified? In other words, would that relationship that you have with that witness or that party or attorney, would that influence or cause you because of that relationship to side more with that individual or to accept more readily that testimony? Is there anybody who feels like that?"
The trial court repeated these questions in substance at intervals during the jury selection, and counsel for both parties also asked questions to determine if the veniremembers harbored any bias based on their relationship with the defendants. None of the veniremembers responded to these questions. The trial court gave the attorneys for both sides an opportunity to further question the jurors on the matter, but they declined to do so. The trial court then dismissed for cause seven of the jurors who had said they were patients of Dr. Eiland.
The defendants contend that the trial court improperly interpreted Dixon to mean that a potential juror in a medical malpractice case who is a patient of the defendant must automatically be struck from the venire, and they point out that Dixon expressly rejects such an absolute rule of exclusion. The record reveals, however, that the trial court merely accepted the jurors' relationship to the defendants as prima facie evidence of probable prejudice. This presumption was apparently rebutted as to the eight jurors who had been patients of the defendants but were allowed to remain on the venire. The trial court set out the following reasons for dismissing the other seven veniremembers:
 "This Court notes that it has the awesome responsibility of attempting to provide a jury panel free of any member who might be biased or prejudiced in the *Page 350 
slightest degree. The Court has attempted to do this to the best of its ability in a fair and impartial manner. For the record, the Court notes that it denied plaintiff's challenges for cause for eight (8) jurors that had previously been patients of one or more of the defendants. Furthermore, a panel of forty-five (45) jurors remains from which the parties could strike. . . .
". . .
 ". . . As was noted in chambers, this Court carefully and meticulously considered the totality of the circumstances in deciding to grant the challenge of these jurors for cause. In this regard, this court considered the appearance and demeanor of each individual juror in responding to all questions posed to them. This Court specifically took into consideration the method and manner in which those jurors responded. It was the Court's best considered opinion and judgment that the seven (7) jurors who were excused for cause did manifest overt probable prejudice, which was not rebutted, because of their relationship with Dr. Eiland, and consequently, fundamental principles of fairness dictated that these jurors be excused for cause."
We emphasize that a trial judge is given broad discretion in regard to sustaining or denying a challenge for cause, and his decision is therefore entitled to great weight and will not be interfered with unless it is clearly erroneous and equivalent to an abuse of discretion. Kumar v. Lewis, 561 So.2d 1082
(Ala. 1990). Here, it is clear that the trial court based its determination upon its own observations and impressions of the potential jurors, not upon an inaccurate application of our opinion in Dixon. The record indicates no abuse of the trial court's discretion; therefore, the judgment is affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and INGRAM, JJ., concur.