628 So.2d 510 (1993)
David Wayne WRIGHT, By and Through Josephine WRIGHT,
v.
HOLY NAME OF JESUS MEDICAL CENTER, et al.
1920261.
Supreme Court of Alabama.
October 1, 1993.
Rehearing Denied November 19, 1993.
*511 Andrew T. Citrin, Michael A. Worel, and Randolph B. Walton of Cunningham, Bounds, Yance, Crowder, and Brown, Mobile, for appellant.
Edgar M. Elliott III and Deborah Alley Smith of Rives & Peterson, Birmingham, for Holy Name of Jesus Medical Center.
W. Stancil Starnes, Michael A. Florie, and Joseph S. Miller of Starnes & Atchison, Birmingham, for James R. Phillips, M.D., and Gadsden Clinic for Women.
PER CURIAM.
The plaintiff, David "Dusty" Wright, by and through his mother, Josephine Wright (hereinafter "Wright"), appeals from the judgment based on the jury verdict in favor of the defendants, Holy Name of Jesus Medical Center, Dr. J.R. Phillips, and Gadsden Clinic for Women, in his action seeking damages for injuries he suffered at birth. (We will refer to the mother as the plaintiff and appellant.) Wright alleged that Dusty became acutely asphyxiated during birth because he was not delivered soon enough and that, as a result of negligence on the part of the defendants, Dusty suffered moderate to severe cerebral palsy and motor and speech impairment. She asserts that the trial court erred in not striking a particular veniremember for cause and that the trial court gave the jury an incorrect "dynamite" charge.
The trial court initially granted Wright's motion to strike veniremember P.C. for cause but changed that ruling after questioning P.C. concerning her ability to be objective. The relevant portions of the voir dire transcript read as follows:
"THE COURT: Ladies and gentlemen, the questions that I have asked you are designed to see that both sides get a fair and impartial trial. I will ask you, do any of you know of any reason why if you were selected to be a juror in this case, based upon who the parties are, or the type case, do any of you have any reason to believe that you could not be a fair and impartial juror in this case? Any reason at all? Any past dealings with either part[y]?
". . . .
"Yes, ma'am, second row.
"A JUROR: I am a patient of Dr. Phillips.
"THE COURT: All right, and your name?
"THE JUROR: P.C.
"THE COURT: ... [W]ould it affect your ability to render a decision in this case because you are a patient at this time of Dr. Phillips?
"THE JUROR: No, sir.
"THE COURT: All right.
". . . .
"MR. CUNNINGHAM [Wright's lawyer]:... Ms. P.C., I believe you indicated that you had formerly [been] or were currently a patient of Dr. Phillips's. Is that currently or formerly, or both?
"THE JUROR: Currently.
"MR. CUNNINGHAM: Currently. Understanding that this case will relate to issues about whether or not medical negligence occurred that resulted in Dusty Wright's brain damage, understanding that you may be going back to see Dr. Phillips after this case is over, do you feel that you would be placed in an awkward position having to [decide] issues relating to his negligence or lack of negligence, and then after that, going and visiting with him in his office? Seems to me like that would place you in an uncomfortable position. And that's my question.
"THE JUROR: Awkward situation, yes.
"MR. CUNNINGHAM: And by awkward, do you mean that it would be difficult to return a verdict against him and then go see him two weeks later for a medical problem?
"THE JUROR: Probably, yes.
"MR. CUNNINGHAM: Okay. Thank you for your candor."
The following discussion then occurred outside the presence of the jury:
"THE COURT: ... Are there any challenges to the venire as it's situated at this time?

*512 "MR. CUNNINGHAM: Judge, we have a couple of for-cause challenges. I believe one of them we may be able to agree on, Ms. E., No. 14.
"THE COURT: Yes.
"MR. CUNNINGHAM: We also challenge for cause No. 8, Ms. P.C., who is a current patient of Dr. Phillips's, and who answered in response to my questions that she would feel uncomfortable sitting as a juror because of the fact that she intends to go back to see him. We have got some cases on that point we'll be glad to present to Your Honor.
"THE COURT: All right. Do you all want to be heard on No. 8? I will grant the 14, I think it's fairly clear, her situation.
"MR. STARNES [lawyer for Dr. Phillips and the clinic]: Judge, No. 8, cases on it, two cases out of Dothan. The ultimate decision is with the judge to make, it's discretionary. I think the judge has to be satisfied that there is something in the relationship which would prevent the juror from following the oath. And if you are convinced of that, then, I think you ought to grant the challenge; if not, you ought to deny it.
"THE COURT: All right.
"MR. STARNES: No sense in me arguing about it, it's your discretion.
"THE COURT: Okay, I think, based on her responses in this case, I will grant the challenge to No. 8, 14 and 8."
Back in the presence of the jurors, the court again took up the question with Ms. P.C.:
"THE COURT: Ladies and gentlemen, I want to follow up on a couple of questions that I need to know about. This pertains to Ms. P.C. Ms. P.C., now, you are a current patient of Dr. Phillips's, and I believe you had indicated that, you know, you would have some awkwardness in being under his care, and so forth, if you were to sit on this jury. The question I need to put to you is whether or not that relationship would be one such that you would not be able to sit on this case and render a fair verdict based on the evidence, or would that sort of skew you one way or the other in this case from the beginning?
"THE JUROR: I don't think it would. It would be an awkward position as far as being his patient.
"THE COURT: Uh-huh.
"THE JUROR: Because I do see Dr. Phillips.
"THE COURT: I understand. But you do not believe that it would sway you one way or the other, or make you be inclined to rule favorably to him
"THE JUROR: No, sir.
"THE COURT: Or against him?
"THE JUROR: No, sir.
"THE COURT: All right. Okay.
". . . .
"THE COURT: All right. Would counsel please approach the bench, as best you can.
"(Whereupon, the following occurred outside of the hearing of the jury panel, as follows:)
"THE COURT: As to Juror B., I would grant the challenge.... But, as to P.C., I would not."
As the above colloquies indicate, P.C. admitted that she would feel awkward on her next visit to Dr. Phillips after having served on the jury in his case, but she did not say that she would feel awkward sitting on the jury. Although a doctor-patient relationship is prima facie evidence of probable prejudice on the part of a potential juror, Roberts v. Hutchins, 613 So.2d 348 (Ala.1993), it is not cause for automatic exclusion of a veniremember. See Dixon v. Hardey, 591 So.2d 3 (Ala.1991), in which this Court declined to hold that as a matter of law a patient may never serve as a juror in a case against his or her personal physician. The presumption of prejudice is, rather, a rebuttable one:
"Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence.... This determination, again, is to be based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and *513 demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence."
Knop v. McCain, 561 So.2d 229, 232 (Ala. 1989) (citations omitted).
It is the trial court's responsibility to determine whether that presumption can be overcome:
"This Court cannot and does not seek to supplant the functions of the trial court in evaluating the personal demeanor of the jurors. Once a juror makes an initial statement that is vague, ambiguous, equivocal, uncertain, or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial. However, once a juror indicates initially that he or she is biased or prejudiced or has deep-seated impressions, so as to show that he or she cannot be neutral, objective, or impartial, the challenge for cause must be granted."
Id. at 234. Thus, we must look at the questions asked and the answers given in this case to determine whether the trial court here abused the discretion reserved to it.
When we compare this case to others involving strikes for cause, we must conclude that the trial court should have granted the challenge for cause as to veniremember P.C. In Gray v. Sherwood, 436 So.2d 836 (Ala. 1983), two veniremembers who were patients of the defendant doctors specifically asked to be struck from the jury. Similarly, in Wood v. Woodham, 561 So.2d 224 (Ala.1989), one prospective juror vacillated in her answers to the judge's questions. First, she said that she would rather not serve on the jury; then she said she would do "her best" to make a decision based only on the evidence; then she did not respond to the judge's attempt to clarify an answer. She finally answered that she could base her decision solely on the evidence and the judge's instructions. 561 So.2d at 227. The other prospective juror in that case worked in the medical community and admitted repeatedly that that fact would influence her decision. This case is strikingly similar.
In Knop v. McCain, supra, one prospective juror expressed the following sentiments regarding lawsuits: "I guess my personal opinion is that people are too quick to sue. The evidence would have to be, I guess, I guess the evidence would have to be overwhelming for your client before I would be willing to give her money." 561 So.2d at 230. She also said that being on the jury would make her uncomfortable because "lawsuits bother me a little bit." Id. Another prospective juror, who had taught all three of the defendant doctor's children, expressed doubts about her ability to be fair and impartial toward the plaintiff. This Court reversed the judgment in that case because of the trial court's failure to dismiss those prospective jurors for cause.
Finally, in Dixon v. Hardey, supra, a prospective juror who was a regular patient of the defendant doctor and who was employed by a dentist expressed reservations about her ability to further the "best interest of justice" and said that she would rather not serve. We held that her misgivings, coupled with the trial court's failure to question her or to allow the plaintiff's attorney further voir dire examination, warranted reversal.
Litigants are entitled to a trial before an impartial jury, as nearly as that is possible. In this case, P.C. was currently a patient of Dr. Phillips, and she candidly stated that that fact would place her in an awkward position if she served on this jury. After more questioning by the trial judge, she said that she believed that she could be fair, although she never withdrew her initial statement that serving on this jury would place her in an awkward position because of the fact that she was currently a patient of Dr. Phillips. We hold that under these facts the trial court erred in not striking P.C. for cause.
Because of the error in failing to strike juror P.C. for cause, the judgment is reversed.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS and KENNEDY, JJ., concur.
*514 HOUSTON, J., concurs specially.
MADDOX and STEAGALL, JJ., dissent.
HOUSTON, Justice (concurring specially).
I joined Justice Maddox's dissent in Wood v. Woodham, 561 So.2d 224, 228-29 (Ala. 1989). I did not vote in Roberts v. Hutchins, 613 So.2d 348 (Ala.1993); Dixon v. Hardey, 591 So.2d 3 (Ala.1991); or Knop v. McCain, 561 So.2d 229 (Ala.1989). If I were writing on a clean slate, I would affirm, because I do not believe the trial court in this case, or in any of the four cases cited herein, abused its discretion. However, I cannot materially distinguish this case from Wood v. Woodham, Roberts v. Hutchins, Dixon v. Hardey, or Knop v. McCain; therefore, I am bound by the doctrine of stare decisis to reverse and remand.
STEAGALL, Justice (dissenting).
I do not agree with the majority's conclusion that the trial court should have granted the challenge for cause as to veniremember P.C. As the majority notes in its opinion, P.C. acknowledged that she would feel awkward on her next medical visit to Dr. Phillips after having served on the jury in his case, but she did not say that she would feel "awkward" serving on the jury or that her medical relationship with Dr. Phillips would affect her ability to remain impartial. P.C. did not vacillate in her answers, nor did she indicate that she had "deep-seated impressions" that would prohibit her from remaining neutral and objective. She merely acknowledged that seeing Dr. Phillips as his patient after the trial would put her in an "awkward situation." She consistently said that she could be fair and unbiased as a juror. Thus, I would hold that the trial court did not abuse its discretion in denying Wright's motion to strike P.C. for cause. Therefore, I respectfully dissent.