Ophelia RANDOLPH, Administratrix of the Estate of Melvalene Hanson, Deceased *v.* ER ARKANSAS, P. A., James Guthrie, Ouachita Clinic, Ltd., J. R. Kendall and Judson M. Hout

95-968                                            925 S.W.2d 160

Supreme Court of Arkansas
Opinion delivered July 15, 1996

*Gary Eubanks & Associates*, by: *James Gerard Schulze* and *Hugh F. Spinks*, for appellant.

*Shackleford, Phillips, Wineland, & Ratcliff, P.A.*, by: *Dennis L. Shackleford* and *Teresa Wineland*, for appellees.

TOM GLAZE, Justice. This action was brought as a result of alleged medical malpractice that resulted in the wrongful death of Melvalene Hanson. Hanson's estate sued appellees, alleging Hanson had complained of chest and arm pains, and after having been examined and released by Doctors J. R. Kendall and Judson Hout on two separate occasions within four days, she died of a heart attack at home only a few hours after her second release from treatment. The gravamen of the estate's allegations of medical negligence was that the doctors failed to perform an electrocardiogram (EKG).

Before trial and during *voir dire* of the jury, a number of veniremembers indicated they knew the doctors, and the estate moved to disqualify those potential jurors who had had (or had) a relationship with them. One of those jurors, Melba George, served on the twelve-person jury, and is the subject of one of the points for reversal in this appeal. The estate's second issue for reversal concerns its out-of-state expert witness, Dr. James Goldstein, who testified that an EKG was essential in Hanson's circumstances, and Doctors Kendall and Hout had deviated from the standard of good medical care when no EKG was performed. Because the defense focused on Goldstein's lack of familiarity with the standard of care in Camden, Arkansas, the estate offered, and was denied, an instruction it believed would have better explained the so-called "locality rule" instruction the trial court gave the jury. The jury retired and returned a verdict in favor of the defendants, and the estate brings this appeal, asserting the two points raised below.

In the estate's first argument, it complains of seven different veniremembers who had had some type of social, working, or medical relationship with either Kendall or Hout. Four of these jurors did not serve on the jury, and several, who did serve, had not

been challenged peremptorily or for cause. Suffice it to say, the estate's argument centers on Melba George, who, the estate suggests, was challenged for cause and wrongfully allowed to serve; thus, we turn our attention to George. In doing so, we keep in mind the controlling principle that it is presumed that persons comprising the venire are unbiased and qualified to serve, and it is appellant's burden to prove otherwise. *Kemp* v. *State*, 324 Ark. 178, 919 S.W.2d 943 (1996). In addition, the proper test the court must employ when sorting through these juror-bias issues is whether the prospective juror can lay aside his impression or opinion and render a verdict based upon the evidence in court. *Wainwright* v. *State*, 302 Ark. 371, 790 S.W.2d 420 (1990), cert. denied, 111 S.Ct. 1123 (1990).

In the present case, the issue concerning Ms. George's bias stems from a series of questions and answers during *voir dire*. George responded to the court's query, whether anyone had any kind of ongoing business relationship with the defendants, by indicating that Dr. Kendall was her doctor. Ms. George had seen Dr. Kendall within the previous two to three weeks, and was under his care. The following pertinent colloquy took place:

> ESTATE'S ATTORNEY: I'm going to ask you the pertinent questions that I asked Mr. Philyaw about having to sit here and make a decision that would potentially adverse your doctor then going back to seek him in the future, would that make it difficult for you to be fair in a case like this for Ms. Randolph?
>
> GEORGE: I believe it would because I have to depend on him to tell me what I need to do to keep me living.
>
> ESTATE'S ATTORNEY: So, what you're telling us, as I understand it, is that because of that relationship, even though you would try it would be very difficult and in all probability you could not be fair because of that relationship?
>
> GEORGE: (No response.)
>
> COURT: In other words, you can't listen to the evidence and decide this strictly on what you hear in the courtroom?
>
> GEORGE: I could do that. But if it causes me to doubt my doctor in any way, I don't know if I could go back to him.

COURT: Well, this is different — All I want to know from you, ma'am, and from each of you, maybe we can get this out here right now, for those of you who are patients at the clinic with Doctor Hout or Doctor Kendall what we are asking, and I think we've asked it once before, your job as a juror if you are selected to serve is to try this case strictly on the evidence that's presented from the witness chair and whatever exhibits are introduced, that and only that, and what we are asking is can you do that, be fair to both sides? You start out as if not knowing anything about this particular case and try it simply on the evidence that's presented from the witness chair and the law as I give it in the form of instructions?

GEORGE: Yes.

George's initial response to the estate's *voir dire* raised the question of whether she could serve fairly, and the trial court properly pursued that matter, by asking if George could listen to the evidence and strictly decide the case on what she heard in the courtroom. George said that she could do that. Any reservations expressed by George in her response dealt only with her declaration that "if it causes me to doubt my doctor in any way, I don't know if I could go back to him." George, then again, told the court she could decide the case based strictly on the evidence and law presented in the courtroom. It has long been held that the qualification of a juror is within the sound discretion of the trial court, which has an opportunity to observe the venire members that the appellate court does not have, and the trial court will not be reversed unless the appellant demonstrates an abuse of discretion. *Moss v. State*, 280 Ark. 27, 655 S.W.2d 375 (1983); *Rumping v. Arkansas National Bank*, 121 Ark. 202, 180 S.W. 749 (1915). Here, the trial court followed the correct test in its *voir dire* of George, and acted well within its discretion to permit George to serve.

Before leaving the estate's first point, we acknowledge its argument for us to adopt a line of Alabama cases that hold the relationship of physician and patient constitutes *prima facie* evidence of probable prejudice on the part of the veniremember. *Dixon v. Hardey*, 591 So.2d 3 (Ala. 1991); *see also Boykin v. Keebler*, 648 So.2d 550 (Ala. 1994); *Bell v. Vanlandingham*, 633 So.2d 454 (Ala. 1994); *Wright v. Holy Name of Jesus Medical Center*, 628 So.2d 510 (Ala. 1993); *Roberts v. Hutchins*, 613 So.2d 348 (Ala. 1993). We reject

such suggestion, first, because we believe Arkansas's established law in questioning prospective jurors for bias is relevant and effective regardless of whose relationship or purported bias might be in issue. Second, the Alabama cases cited by the estate, in our view, would not avail the estate here a different result in any event. The Alabama Supreme Court specifically refused to adopt an absolute rule of exclusion where a patient may never serve as a juror in a case against his or her physician. *Dixon*, 591 So.2d at 8. Instead, the Alabama court has said that, once *prima facie* evidence of prejudice on the part of a potential juror has been presented, it is the trial court's function to question the juror further, so as to ascertain whether the juror can be impartial, *Id.* at 7, and the appellate court looks at the questions asked and the answers given to determine whether the trial court abused the discretion reserved to it. *Wright*, 628 So.2d at 513. In the circumstances now before us, the trial court did a thorough job in questioning and testing Ms. George's possible bias, and, whether analyzed under Arkansas's or Alabama's law, we conclude the trial court did not abuse its discretion in allowing her to serve.

The estate's second argument concerns the trial court's refusal to give a proffered instruction the estate claims would have clarified AMI 1501, which reads in relevant part as follows:

> In diagnosing the condition of and treating of a patient, a physician must possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing engaged in the same type of service or specialty in the location in which he practices or in a similar locality. A failure to meet this standard is negligence.

Because defendants focused on the estate's expert's (Dr. Goldstein's) lack of familiarity with the Camden area and its medical services, the estate, citing to language employed in *Gambill* v. *Stroud*, 258 Ark. 767, 531 S.W.2d 945 (1975), proffered the following instruction, which it argues explains the "similar locality" language in AMI 1501:

> In these instructions, when I have used the words "the same or similar locality" the similarity of communities should not depend on population or area but rather upon their similarities from the standpoint of medical facilities,

practices, and advantages.

We dispose of the estate's argument, first, by stating that AMI 1501, as given, covers the duty the defendants owed Hanson in this medical negligence case, and it is not error to refuse a proffered non-AMI instruction, even if it correctly states the law. *See Wharton v. Bray,* 250 Ark. 127, 464 S.W.2d 554 (1971). In addition, this court has expressly stated that the same or similar locality rule articulately expressed in AMI 1501 is proper, adequate, viable and not unduly restrictive on the evidence a plaintiff may introduce. *Gambill,* 258 Ark. at 769, 531 S.W.2d at 948. Accordingly, we believe the language contained in AMI 1501 is more than sufficient to have permitted the Hanson estate to develop the evidence and argue to the jury that her expert was entitled to credence based on his familiarity with similar localities in terms of medical facilities, practices, and advantages.

For the reasons set out hereinabove, we affirm.

DUDLEY, J., not participating.