Roy O. BREEDLOVE *v.* STATE of Arkansas

CA CR 97-1053 970 S.W.2d 313

Court of Appeals of Arkansas
Division II
Opinion delivered June 17, 1998

*Beverly C. Claunch*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Roy O. Breedlove has appealed from his conviction of sexual abuse in the first degree. For reversal, appellant argues that the trial court erred by denying his motion for a directed verdict and his motions for mistrial. We disagree and, therefore, affirm.

Breedlove was convicted of first-degree sexual abuse pursuant to Arkansas Code Annotated § 5-14-108(a)(4) (Repl. 1997). At the close of the State's evidence, Breedlove moved for a directed verdict on the ground that the State failed to prove that there was sexual gratification by sexual contact with the victim. The trial

court denied Breedlove's motion. Breedlove renewed his motion at the close of all the evidence. This motion was also denied.

 On appeal, Breedlove argues that the trial court erred by denying his motion for a directed verdict because there was insufficient evidence to support a conviction of first-degree sexual abuse. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *See Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). On appeal, this court reviews the evidence in a light most favorable to the appellee, and affirms if substantial evidence supports the jury verdict, and only evidence supporting the guilty verdict need be considered. *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other with reasonable certainty beyond mere suspicion or conjecture. *Kennedy v. State*, 49 Ark. App. 20, 894 S.W.2d 952 (1995).

 As mentioned earlier, Breedlove moved for a directed verdict on the ground that the State failed to prove sexual gratification by sexual contact pursuant to Ark. Code Ann. § 5-14-108(a)(4) (Repl. 1997). Breedlove based this motion on the fact that there was no testimony presented by the State as to Breedlove's demeanor or actions. However, on appeal, Breedlove argues that his motion should have been granted because the witnesses, particularly the six-year-old victim, were not credible and their testimony was insufficient to support the charge of first-degree sexual abuse. In fact, Breedlove has not raised the issue concerning sexual gratification by sexual contact on appeal. The issues appellant raises on appeal were not properly preserved for review because he did not present those arguments to the trial court, and we do not consider arguments raised for the first time on appeal. *See Weaver v. State*, 56 Ark. App. 104, 939 S.W.2d 316 (1997).

Next, Breedlove argues that the trial court erred by denying his motion for a mistrial because he was brought into the courtroom in view of the jury panel in handcuffs. Prior to jury selection, Breedlove moved for a mistrial on the ground that he was prejudiced because he was brought into the courtroom in cuffs in front of the jury panel. This argument, however, is unpersuasive.

■ A mistrial is a drastic remedy to which the court should resort only when there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *King v. State*, 317 Ark. 293, 877 S.W.2d 583 (1994). The trial court has wide discretion in granting or denying a motion for a mistrial, and its discretion will not be disturbed except where there is an abuse of discretion or manifest prejudice to the complaining party. *Id.*

■ ■ It is not prejudicial per se for a defendant to be brought into court handcuffed, and the defendant must affirmatively demonstrate prejudice. *Williams v. State*, 304 Ark. 218, 800 S.W.2d 713 (1990). In the present case, Breedlove was briefly brought into the courtroom with cuffs during the jury-selection process. There was no verification that any of the potential jurors saw the cuffs on Breedlove. The trial court also granted Breedlove's counsel the opportunity to ask the jury panel whether they made any kind of observation when appellant stepped in the room and whether anything they saw would affect their decision or affect their ability to be fair and impartial. Breedlove's counsel, however, chose not to ask any questions and did not pursue the matter any further. Thus, Breedlove has failed to affirmatively demonstrate prejudice.

Last, Breedlove contends that the trial court erred by denying his second motion for a mistrial because a news report made references to his prior conviction by a military tribunal that had been found to be inadmissible by the trial court after a suppression hearing. This contention is unpersuasive.

Before the jury was sworn in, the judge recessed court for the evening. That evening, Channel 4 News reported on the case and made inaccurate statements concerning Breedlove's prior conviction. The news report indicated that Breedlove had previously been convicted of raping and sodomizing his own children and that he received a twenty-two-year sentence and served six or seven years when Breedlove had, instead, been convicted of attempted rape and indecent acts, and sodomy, but not rape. He received a ten-year prison sentence and served six years.

The next morning, Breedlove's counsel again moved for mistrial and argued that the jury was tainted because the news report,

which was likely seen by members of the jury, mentioned his prior conviction, which was inadmissible during trial, and the news report misstated certain other facts about appellant.

In response to Breedlove's second motion for a mistrial, the trial judge asked the jurors if any of them had seen the news report. Seven jurors acknowledged that they had seen some or all of the report. The trial judge then interviewed each juror individually, and excused one juror who indicated that the news report would affect his ability to consider the evidence impartially.

After returning to the courtroom, the trial judge verified that, with the exception of the one excused juror, the other jurors, who had seen the report or some of it, could disregard what they saw or heard and consider the evidence as presented. After adding an alternate juror to the panel, the judge then stated:

> And let me again admonish each of you, if you have seen the report or a portion of it, you're admonished to disregard that report and not consider that, but to consider only the evidence that is presented here at this trial in arriving at your verdict. And you are also admonished not to discuss anything that may have been seen or heard in that report or broadcast during your deliberations in the jury room. But to consider and deliberate only on the evidence that's presented here and can each and will each of you do that? Okay, thank you.

The proper test that the court must employ when sorting through juror-bias issues is whether the prospective juror can lay aside his impression or opinion and render a verdict based upon the evidence in court; because the qualification of a juror is within the sound discretion of the court, we will not reverse the trial court unless the appellant demonstrates an abuse of discretion. *See Randolph v. ER Arkansas, P.A.*, 325 Ark. 373, 925 S.W.2d 160 (1996). By questioning each juror who had seen the news report, individually, and then admonishing the panel as a whole, the trial judge followed the proper procedure for dealing with this issue. Breedlove was not prejudiced. Therefore, the trial court did not err in denying Breedlove's second motion for a mistrial.

Affirmed.

STROUD and CRABTREE, JJ., agree.