The appellant, Ronald Lamar Bowman, was convicted of murder made capital because it was committed during the course of a robbery, a violation of § 13A-5-40(a)(2), Ala. Code 1975. He was sentenced to life in prison without parole. Among other issues, Bowman contends on appeal that the trial court abused its discretion by denying his challenge for cause of prospective juror L.J.L. The majority ruled in Part III of its unpublished memorandum *Page 1232 
that the trial court's denial of Bowman's challenge for cause against L.J.L. was not error. I disagree with the majority's discussion in Part III of its unpublished memorandum.
Prospective juror L.J.L. testified during voir dire that she knew the district attorney from "working with him" (R. 201); that she knew Agent Johnny Tubbs, who was identified as an individual who would be sitting at the prosecution table during the trial; that she knew Bowman from her employment with the sheriff's department; and that she knew various members of both the victim's and Bowman's families. L.J.L. stated that none of this knowledge would prevent her from being fair and impartial and rendering a fair and just verdict.
The record also includes the following voir dire examination of prospective juror L.J.L.:
 "THE COURT: Ms. [L.J.L.], you may have indicated in your conversations with the Court and these lawyers that you know members of [the victim's] family, that you may have heard or read something about this case. We just have you back here to discuss that information. Are you related to any members of the family, or you know them?
". . .
"PROSPECTIVE JUROR [L.J.L.]: Yeah, I know some of the family members.
"THE COURT: How close are you to them?
"PROSPECTIVE JUROR [L.J.L.]: Just around the neighborhood.
 "THE COURT: Did you happen to visit the family's house after the incident or during the funeral?
"PROSPECTIVE JUROR [L.J.L.]: No, sir.
 "THE COURT: Have you discussed with any of them the facts of this case?
"PROSPECTIVE JUROR [L.J.L.]: No, sir.
"THE COURT: Do you know anything about the facts of this case?
""PROSPECTIVE JUROR [L.J.L.]: Nothing but what I read.
"THE COURT: Do you recall what that may have been?
"PROSPECTIVE JUROR [L.J.L.]: I don't remember.
 "THE COURT: We know at some point you may work in the court system with your relationship with [the Department of Human Resources]. Have you formed an opinion one way or the other about the innocence or guilt of Mr. Bowman?
"PROSPECTIVE JUROR [L.J.L.]: Uh-uh.
 "THE COURT: Do you think you would be able to sit in this case, and listen to the evidence, and base your verdict solely on the evidence in this case?
"PROSPECTIVE JUROR [L.J.L.]: Yeah.
"THE COURT: Do you have a problem being fair to the State of Alabama?
"PROSPECTIVE JUROR [L.J.L.]: Uh-uh.
"THE COURT: Do you have a problem being fair to Mr. Bowman?
"PROSPECTIVE JUROR [L.J.L.]: No.
"THE COURT: State.
"MR. HENRY [prosecutor]: No questions.
 "MR. WHATLEY [defense counsel]: You'd indicated you were, I think, one of two people out there that said you knew Mr. Bowman; is that correct? *Page 1233 
 "PROSPECTIVE JUROR [L.J.L.]: I know him from when I worked with the sheriff's department?
 "MR. WHATLEY: What did you know about him from working with the sheriff's department?
 "PROSPECTIVE JUROR [L.J.L.]: I just know he was one of the inmates at the county. That's where I worked.
 "MR. WHATLEY: Where did you work at the county that you would know who was an inmate, who was locked up?
"PROSPECTIVE JUROR [L.J.L.]: Right across the street at the jail.
". . . .
"MR. WHATLEY: What did you do over there?
"PROSPECTIVE JUROR [L.J.L.]: I was a jailer.
"MR. WHATLEY: Okay. So you processed them in and out?
"PROSPECTIVE JUROR [L.J.L.]: Uh-huh.
"MR. WHATLEY: You weren't involved in the investigations or anything?
"PROSPECTIVE JUROR [L.J.L.]: Uh-uh.
". . . .
 "MR. WHATLEY: Okay. And you know — did you know why Mr. Bowman was locked up over there? Did you know what his charge was?
"PROSPECTIVE JUROR [L.J.L.]: I don't even remember the paperwork.
 "MR. WHATLEY: But aside from whether you knew the paperwork or not, do you remember why he was locked up? What charges got him locked up?
"PROSPECTIVE JUROR [L.J.L.]: Uh-uh. I don't even remember.
"MR. WHATLEY: You just remember him?
"PROSPECTIVE JUROR [L.J.L.]: I just remember him.
"MR. WHATLEY: And you went to school with Angela [Bowman's wife].
"PROSPECTIVE JUROR [L.J.L.]: We went to Wallace [State].
". . . .
 "MR. WHATLEY: So would 1996 have been the last time you had any contact with Angela?
 "PROSPECTIVE JUROR [L.J.L.]: No. Actually when she was over, as well.
"MR. WHATLEY: Okay. So you saw her when she was in the jail, too?
"PROSPECTIVE JUROR [L.J.L.]: Yeah.
"MR. WHATLEY: And that would have been at the latest in 1999?
"PROSPECTIVE JUROR [L.J.L.]: Uh-huh.
 "MR. WHATLEY: Okay. You know more about a lot of this than most of those folks sitting out there, you realize?
"PROSPECTIVE JUROR [L.J.L.]: Yeah.
 "MR. WHATLEY: With that knowledge, can you say that it wouldn't affect you if you were selected as a juror in this case, in all complete honesty? I mean, that's what we're here about.
"PROSPECTIVE JUROR [L.J.L.]: Truthfully, it would affect me.
"MR. WHATLEY: Yeah.
"PROSPECTIVE JUROR [L.J.L.]: It would.
"MR. WHATLEY: Kind of hard for it not to, given —
"PROSPECTIVE JUROR [L.J.L.]: Yeah. Right, right.
 "MR. WHATLEY: — that you both (sic) Angela, and you knew Mr. Bowman, and you knew why he was there.
"PROSPECTIVE JUROR [L.J.L.]: Right. *Page 1234 
 "MR. WHATLEY: You know we're all here about trying to be fair to both sides.
"PROSPECTIVE JUROR [L.J.L.]: Right.
 "MR. WHATLEY: Would it be difficult for you to honestly be fair to Mr. Bowman in this case, with what you already knew before you got there?
""PROSPECTIVE JUROR [L.J.L.]: It would be difficult. Yeah, it would.
 "MR. WHATLEY: Can you honestly say that you can set aside those feelings that you would have based on this prior knowledge, and follow the law, and give him that full presumption of innocence knowing everything that you know about this case?
"PROSPECTIVE JUROR [L.J.L.]: I could. I could, yeah.
"MR. WHATLEY: You could set it aside?
"PROSPECTIVE JUROR [L.J.L.]: Yeah.
"MR. WHATLEY: All right. Thanks.
". . . .
"THE COURT: Is there a challenge?
 "MR. WHATLEY: Sure, Judge, I'll challenge her for cause, and you'll deny it because she didn't answer the questions the way she needed to. She did everything but, and she came as close as she could. And I would challenge for cause, and I know you'll deny it.
"THE COURT: I'll deny it."
(R. 385-91.) (Emphasis added).
 "'"The test to be applied [in qualifying a prospective juror] is probable prejudice. Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised." Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala. 1977).'"
Daily v. State, 828 So.2d 340, 342-43 (Ala. 2001).
Based on the questions propounded to L.J.L., and the answers provided by L.J.L. to those questions, I believe that probable prejudice was established requiring that L.J.L. be disqualified for cause.
L.J.L. stated that she knew more about the case than the other potential jurors. She obtained her knowledge because she knew the victim, she knew members of the victim's family, she knew the defendant, she knew the defendant's wife, she knew members of defendant's family, and she knew members of the defendant's wife's family. She also became familiar with the case because she was an employee at the jail. L.J.L. also testified that she knew police officers involved in the case, and she stated that she knew the district attorney from "working with him."[1]
Twice in response to questioning by the defense on voir dire, L.J.L. stated that the knowledge that she already had about the case would make it difficult for her to be fair to Mr. Bowman.
"Even if a juror eventually states that he or she could render a verdict exclusively upon the evidence, the simple affirmative response does not necessarily absolve that juror of probable prejudice." Robertsv. Hutchins, 613 So.2d 348, 349 (Ala. 1993), citing Dixon v. Hardey,591 So.2d 3 (Ala. 1991) (showing of prejudice not required *Page 1235 
to obtain reversal after erroneous denial of challenge for cause), abrogated by Bethea v. Springhill Mem'l Hosp., 833 So.2d 1 (Ala. 2002) ("harmless-error" analysis applies before reversing a judgment after an erroneous denial of a challenge for cause.) Despite L.J.L's ultimate answer that she would be fair, I believe this juror's ties with law enforcement — being the local jailer while Bowman was incarcerated, knowing the police involved, and "working with" the district attorney — and her connection with the families belie her ultimate answers that she would be fair. In my opinion the voir dire questions and answers suggested a familiarity with the case indicating that L.J.L.'s bias was more probable than possible. Thus, under the facts of this case, regardless of L.J.L.'s answers that she could set aside her feelings, I believe that the defense challenge for cause should have been granted.
Moreover, although I believe the challenge for cause should have been granted for the reasons stated above, neither the trial court nor the prosecution presented any follow-up questions to what was, at the very least, conflicting statements given by L.J.L.
 "'"'[O]nce a [prospective] juror makes an initial statement that is vague, ambiguous, equivocal, uncertain or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial.' Knop v. McCain, 561 So.2d 229, 234 (Ala. 1989)."'"
Hoobler v. State, 668 So.2d 905, 908 (Ala.Crim.App. 1995) (quoting Fordv. State, 628 So.2d 1068, 1070 (Ala.Crim.App. 1993)). Thus, because the conflicting responses left the question of L.J.L.'s bias unclear, the prosecutor or the judge should have inquired further into L.J.L.'s potential bias.
 "'. . . We hold that it is not defense counsel's obligation to rehabilitate a juror who has responded to questions in a manner that would sustain a challenge for cause. The appropriate procedure, when the record preliminarily establishes that a juror's views could prevent or substantially impair his or her duties, is for either the prosecutor or the judge to make sure the prospective juror can be an impartial member of the jury.'"
Hall v. State, 820 So.2d 113, 125-26 (Ala.Crim.App. 1999) (Florida Supreme Court cited "for the proposition that having the trial court rehabilitate jurors is a practice favored by reviewing courts.") (quotingBryant v. State, 601 So.2d 529, 532 (Fla. 1992)).
Notwithstanding my opinion expressed above, the record in this case fails to disclose whether L.J.L. was struck by a peremptory challenge, and, if so, by whom. Moreover, there has been no assertion that the defense suffered prejudice by expending a peremptory challenge to remove L.J.L. from the jury venire, if it did, nor has there been any suggestion that the defense suffered prejudice from L.J.L.'s presence on the jury.
Thus, although I believe L.J.L. should have been removed from the venire for cause, I am compelled to concur as to the result.
 "The erroneous denial of a challenge for cause is harmless error, and as `long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that Sixth Amendment was violated.' Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)."
K.R.B. v. State, 834 So.2d 826, 830 (Ala.Crim.App. 2001) (Cobb, J., concurring in part, dissenting in part, and concurring in the result). *Page 1236 
Based on the foregoing, I concur only in the result reached as to Part III of the unpublished memorandum. I concur as to the remaining issues.
[1] Though unclear, the record also contains a remark suggesting that L.J.L. had some association with law enforcement through her past employment with the Department of Human Resources.